Yoav M. Griver, Esq.
Anthony I. Giacobbe Jr., Esq.
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>       v.<br><br>CEDAR GROVE COMPOSTING, INC., CEDAR GROVE COMPOSTING FACILITY, and CEDAR GROVE, INC.,<br><br>          Defendants. | Case No.: 15-CV-975 (NRB) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR STAY PENDING
DETERMINATION OF PROPER FORUM UNDER FIRST-TO-FILE RULE**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

III.  ARGUMENT ............................................................................................................. 7

     A.    There Is No Dispute That Judge Jones Should Determine
Which Case Qualifies as the First-Filed Action Under the
First-to-File Rule. ........................................................................................... 7

     B.    A Stay of the New York Action Is Appropriate While the
Parties Await Judge Jones' Ruling on the First-to-File Issue. ........................ 9

IV.   CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alltrade, Inc. v. Uniweld Products, Inc.*,
  946 F.2d 622 (9th Cir. 1991) ................................................................................................7

*Audio Entertainment Network, Inc. v. Kahn*,
  No. 98-56965, 1999 U.S. App. LEXIS 34500 (9th Cir. 1999) ..........................................8

*Certain Underwriters at Lloyd's, London v. The Travelers Prop. Cas. Co.*,
  161 Wn. App. 265 (Wash. 2011) ........................................................................................3

*Citigroup, Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D. N.Y. May 31, 2000) ..............................................................8, 10

*Erickson Beamon, Ltd. v. CMG Worldwide, Inc.*,
  No. 12 Civ. 5105 (NRB), 2013 U.S. Dist. LEXIS 137865 (S.D. N.Y. Sept.
  25, 2013) ...........................................................................................................................8, 9

*Koninklijke Philips Elecs. N.V. v. Cardiac Sci., Inc.*,
  No. C03-1324C, 2003 U.S. Dist. LEXIS 17153 (W.D. Wash. Aug. 26, 2003) .................8

*Noble v. US Foods, Inc.*,
  No. 14-cv-7743-RA, 2014 U.S. Dist. LEXIS 162643 (S.D. N.Y. Nov. 19,
  2014) ...............................................................................................................................8, 10

*Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*,
  No. 03 Civ. 3227 (CBM), 2003 U.S. Dist. LEXIS 20933 (S.D. N.Y. Nov. 20,
  2003) ....................................................................................................................................7

**STATUTES**

RCW 4.28.185(1)(d) ..................................................................................................................4

Washington Uniform Declaratory Judgment Act, RCW Ch. 7.24, et seq. ............................4

## I.   INTRODUCTION

Cedar Grove Composting, Inc. ("Cedar Grove")[1] requests that the Court stay this action pending determination by the United States District Court for the Western District of Washington of which of the two competing actions now at issue – the Washington action filed in August of 2014 ("Washington Action") or this case filed by Ironshore earlier this year ("New York Action") – qualifies as the first-filed case under the first-to-file rule.  That issue has already been fully briefed to the Court in the Western District of Washington and the parties are awaiting a decision in that case from United States District Judge Richard A. Jones.

As set forth below, Cedar Grove filed the Washington Action against Ironshore on August 20, 2014, seeking, among other things, insurance coverage for four underlying lawsuits filed against Cedar Grove in the state of Washington ("Underlying Actions").  Five months later, Ironshore secretly filed this case, seeking a declaration that it has no coverage obligations to Cedar Grove in connection with the very same Underlying Actions and seeking reimbursement of defense costs already paid to Cedar Grove.  The Washington and New York Actions involve the same parties and the same coverage issues, including coverage for the same defense costs incurred in defending the same Underlying Actions.  For that reason, Cedar Grove filed a Motion for Declaration of Proper Forum Under First-to-File Rule in the Washington Action, requesting that Judge

---

[1]   The two additional defendants named by Ironshore in this action, Cedar Grove, Inc. and Cedar Grove Composting Facility, appear to be fictitious entities that do not exist and therefore may be disregarded.

Jones determine which of the two competing actions qualifies as the "first-filed" action under the first-to-file rule. Ironshore fully responded to that motion and did not dispute the fact that Judge Jones was the appropriate decision-maker with regard to that issue. Cedar Grove respectfully submits that temporarily staying these proceedings until Judge Jones determines the first-to-file issue will conserve the resources of the Court and the parties, and will best allow for the orderly resolution of the conflict created by Ironshore's decision to file this unnecessary action in New York.

## II.   STATEMENT OF FACTS

Cedar Grove is a Washington corporation with its principal place of business in King County, Washington. Cedar Grove does not conduct business in New York State.

In 2012, Cedar Grove sought and obtained insurance coverage from Ironshore for the 2013 and 2014 policy years for composting facilities that it operates in the state of Washington. In August 2014, Cedar Grove commenced the Washington Action. Ironshore commenced the New York Action in January 2015. A copy of the Complaint in the New York Action is annexed as Exhibit A to the accompanying Declaration of Anthony I. Giacobbe, Jr. (the "Giacobbe Dec."). As alleged in Cedar Grove's Complaint in the Washington Action (copy attached as Exhibit B to the Giacobbe Dec.), "Cedar Grove and Ironshore engaged in extensive discussions and negotiations regarding both the intended scope of coverage and coverage for odors allegedly emanating from Cedar Grove's facilities." WA Compl. ¶ 12. "As part of that process," "Ironshore

repeatedly indicated its intent to provide coverage for odor claims during the Policy period, and issued an endorsement at Cedar Grove's request to make that position clear." WA Compl. ¶ 13. The coverage was issued by Ironshore in two layers: (1) a primary layer of coverage with limits of $1,000,000 per occurrence; and (2) a secondary layer of coverage with a $10,000,000-per-incident limit. Declaration of John Brigham ("Brigham Decl.") ¶ 4 (copy submitted as Giacobbe Dec., Ex. C). Cedar Grove paid Ironshore almost $1,000,000 to secure the insurance coverage at issue. *Id.; see also* WA Compl. ¶ 8 (Cedar Grove paid all premiums due).

Ironshore's secondary layer of coverage is "follow-form" coverage that followed the same terms and conditions as Ironshore's primary policy.[2] *See* Environmental Excess Liability Declarations Pages (copy submitted as Giacobbe Dec., Ex. D) ("We will provide the insured with Excess Liability coverage in accordance with the same terms, conditions, exclusions, limitations and warranties as are contained, as of the inception of this policy period, in the controlling underlying insurance."). Ironshore repeatedly acknowledges this fact in its New York Complaint. *See* NY Compl. ¶ 17 ("The Ironshore Specialty excess policy provides the insured with Excess Liability coverage that generally follows form to the 'controlling underlying insurance'"); *id.* ¶ 19 ("Following form to the Ironshore Specialty primary policy ..."); *id.* ¶ 25 ("Following form to

---

[2] "A 'follow form' policy is an excess policy that insures the same risks as, but in excess to, the coverage provided by the lower level policy." *Certain Underwriters at Lloyd's, London v. The Travelers Prop. Cas. Co.*, 161 Wn. App. 265, 269 & n. 3 (Wash. 2011). "'[F]ollowing form' coverage follows the same terms and conditions as the underlying policy." *Id.*

3

Coverage Part II … of the Ironshore Specialty primary policy"); *see also id.* ¶¶ 29, 33, and 37.

Significantly, there is no dispute that the policies were issued to Cedar Grove – again, a Washington corporation conducting business in Washington State that does not conduct business in New York. Brigham Decl. ¶ 2. There is also no dispute that Ironshore conducted business in Washington and submitted to the jurisdiction of the Washington courts by virtue of doing so. RCW 4.28.185(1)(d) (confirming that the act of "[c]ontracting to insure any person, property, or risk" in the State of Washington is an act submitting the issuing entity to the "jurisdiction of the courts of this state as to any cause of action" arising therefrom). And there is no dispute that the policies issued by Ironshore were delivered to Cedar Grove in the state of Washington.

In 2013, four separate lawsuits, including two class actions, were filed against Cedar Grove. WA Compl. ¶ 15. Cedar Grove tendered defense of the lawsuits to Ironshore. WA Compl. ¶ 16. After months of unsuccessfully attempting to convince Ironshore to honor its contractual obligations and timely fund Cedar Grove's defense, Cedar Grove commenced the Washington Action against Ironshore on August 20, 2014.

Paragraph 1 of Cedar Grove's Complaint in the Washington Action indicates that this case "is an action for declaratory judgment, brought pursuant to the Washington Uniform Declaratory Judgment Act, RCW Ch. 7.24, et seq., adjudicating the respective rights, duties and obligations of the parties under an insurance policy issued by Ironshore Specialty Insurance Company." WA Compl. ¶ 1. Cedar Grove's Request for

Relief sought, among other things, "judgment declaring that Defendant is obligated to reimburse legal expenses incurred in the defense of the Lawsuits." WA Compl. ¶ 11. Cedar Grove also sought a "judgment declaring that Defendant's conduct amounted to bad faith" and a "judgment estopping the Defendant from denying coverage, contesting the duty to defend, or otherwise asserting any defenses to coverage or that duty to defend" – remedies available to Cedar Grove under Washington law. WA Compl. ¶ 11.

On November 25, 2014, Ironshore filed a motion to dismiss the Washington Action. Ironshore's motion contended that Cedar Grove's claims were allegedly "moot" because (according to Ironshore at least) there was no remaining dispute between the parties requiring judicial intervention.

Notwithstanding the representations that Ironshore made to Judge Jones that the coverage dispute between Cedar Grove and Ironshore was somehow moot, on January 9, 2015, Ironshore filed the New York Action by way of a complaint seeking Declaratory Relief and "damages" against Cedar Grove, including the repayment of attorney's fees already paid by Ironshore. <u>Significantly, Ironshore did not serve the complaint filed in the New York action on Cedar Grove or otherwise disclose the existence of the New York Action to either the Washington Court or Cedar Grove as required by this Court's and the Western District of Washington's Local Rules</u>. Ironshore instead apparently hoped to secure the dismissal of the Washington Action based on its claims of alleged "mootness" and then litigate the very same claims at issue in the Washington Action here in New York.

Indeed, Ironshore's New York Complaint identified the very same "four civil actions" that were "filed against Cedar Grove" and for which Cedar Grove's Washington Action sought "defense and indemnity." NY Compl. ¶¶ 9 and 11. Indeed, in almost mirror image to paragraph 1 of Cedar Grove's Complaint, paragraph 1 of Ironshore's New York Complaint sought "a declaration … that it has no liability to defendants, or each of them, for insurance coverage." In addition to seeking coverage determinations between the same parties for defense costs in the same underlying lawsuits, the Washington and New York complaints identified the very same policy provisions and coverage defenses already asserted by Ironshore, including those raised before the Western District of Washington in the motion to dismiss Ironshore filed in that Court last November.[3]

Cedar Grove filed its Motion for Determination of Proper Forum Under First-to-File Rule with Judge Jones on February 26, 2015, noting the motion for a hearing date of March 20, 2015. Ironshore responded to the motion and did not dispute the fact

---

[3] For example, Cedar Grove's Washington Complaint alleged that Ironshore "took several coverage positions that it either knew or should have known were meritless." WA Compl. ¶ 17. These positions included: "that the Lawsuits may not be covered because they allegedly did not assert claims for personal injury or property damages"; "that the Lawsuits may not be covered because the claims alleged in the Lawsuits arose for a pollution condition that arose before the inception date of the Policy"; and that it had "no obligation to fund the defense of Cedar Grove until such time as Cedar Grove paid the first $500,000 of its defense costs." WA Compl. ¶¶ 18-20. Ironshore similarly alleges in its New York Action, for example, that "[t]he allegations set forth in the Underlying Actions" in whole or in part, do not constitute "bodily injury" or "property damage" (NY Compl. ¶ 20); that coverage is excluded because the claim was "previously reported" in a prior policy period (NY Compl. ¶ 26); and that an actual controversy exists regarding "whether the Underlying Actions were claims 'first made' against any insured during the policy period" (NY Compl. ¶ 31). A chart identifying the mirror image allegations made in the Washington and New York Actions has been submitted to the Western District of Washington in connection with the pending first-to-file motion and is attached as Exhibit E to the Giacobbe Dec.

6

that Judge Jones was the appropriate decision-maker with regard to that issue. The motion is now fully briefed and the parties are awaiting a decision from Judge Jones.

In the interest of attempting to conserve the resources of the parties and the Court, counsel for Cedar Grove requested that Ironshore voluntarily agree to stay this case pending a determination by Judge Jones of the first-to-file issue. Unfortunately, Ironshore refused that request, necessitating this motion.

## III.  ARGUMENT

### A.  There Is No Dispute That Judge Jones Should Determine Which Case Qualifies as the First-Filed Action Under the First-to-File Rule.

The first-to-file rule is well established in both the Second Circuit and Ninth Circuit. Where a complaint involving the same parties and the same issues has already been filed in a different federal district, the court in which the second suit is filed may either transfer, dismiss or stay the second suit. See *Transatlantic Reinsurance Co. v. Cont'l Ins. Co.*, No. 03 Civ. 3227 (CBM), 2003 U.S. Dist. LEXIS 20933 at *3 (S.D. N.Y. Nov. 20, 2003) ("[i]t is a 'well-settled principle' in th[e] [Second Circuit] that where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first-filed of the two takes priority, absent 'special circumstances' or a balance of convenience in favor of the second"); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) ("The first-to-file rule was developed to serve "the purpose of promoting efficiency" by identifying which of two competing cases should

7

proceed "and should not be disregarded lightly" (quotation omitted)). The parties and issues need not be identical; it is sufficient if they are substantially similar.[4]

In terms of the threshold question of which court should decide the first-to-file issue, there no dispute that the "courts of this district have adopted a bright-line rule that the court before which the first-filed action was brought determines which forum will hear the case." *Noble v. US Foods, Inc.*, No. 14-cv-7743-RA, 2014 U.S. Dist. LEXIS 162643, at *8 (S.D. N.Y. Nov. 19, 2014) (quotation omitted). "In other words, the presumption is that the court which first has possession of the action decides it." *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D. N.Y. May 31, 2000) (quotation omitted). Indeed, Your Honor only recently confirmed this fact. *See Erickson Beamon, Ltd. v. CMG Worldwide, Inc.*, No. 12 Civ. 5105 (NRB), 2013 U.S. Dist. LEXIS 137865, at *12-16 (S.D. N.Y. Sept. 25, 2013) (noting in second-filed action that the "court before which the first-filed action was brought determines which forum will hear the case").

Here, the Washington Action was filed on August 20, 2014 and the New York Action was filed on January 9, 2015. Thus, under this Court's bright-line test, the first-to-file analysis should be completed by Judge Jones. *See Noble*, 2014 U.S. Dist. LEXIS 162643 at *8 n.2 ("The court that is determined to be the forum of the first-filed

---

[4] *See Audio Entertainment Network, Inc. v. Kahn*, No. 98-56965, 1999 U.S. App. LEXIS 34500, at *3 (9th Cir. 1999) (for first-filed rule to apply, the "parties and issues do not need to be exactly identical"); *see also Koninklijke Philips Elecs. N.V. v. Cardiac Sci., Inc.*, No. C03-1324C, 2003 U.S. Dist. LEXIS 17153, at *6 (W.D. Wash. Aug. 26, 2003) (same).

action will conduct the full first-to-file analysis, including consideration of any exceptions to the rule"); *Erickson Beamon, Ltd.*, 2013 U.S. Dist. LEXIS 137865 at *12-16. That is why Cedar Grove timely raised the issue before Judge Jones in the Washington Action.

      B.     **A Stay of the New York Action Is Appropriate While the Parties Await Judge Jones' Ruling on the First-to-File Issue.**

Cedar Grove respectfully submits that this action should be stayed pending the completion of the first-to-file analysis by Judge Jones. As Your Honor recently observed in the *Mount v. PulsePoint, Inc.* case, the Court has the inherent authority to "stay a case" where doing so would aid in the disposition of litigation "with economy of time and effort for itself, for counsel, and for the litigants." No. 13 Civ. 6592 (NRB), 2014 U.S. Dist. LEXIS 29225, at *3 (S.D. N.Y. March 5, 2014). Thus, there is no real dispute that the Court "has the discretion to grant a stay when a similar action is pending in another court," especially where doing so will preserve the resources of the Court and the parties. *Id.* (granting motion to stay later-filed class action where MDL action covering the same issues was pending in different district); *see also id.* ("courts may stay a case pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to be stayed if such a stay would be in the interests of judicial economy" (quotation omitted)). That test is clearly satisfied here for several reasons.

First, staying the New York Action will conserve the resources of both the parties and the Court, especially in light of the fact that the New York Action has not yet

9

moved forward. There is simply no pressing need for this action to move forward until Judge Jones renders his decision on the first-to-file issue, especially where that issue has already been fully briefed and the parties are now awaiting a decision from the Court. Forcing the litigation forward now simultaneously on two fronts will accomplish nothing other than wasting the parties' and Court's resources. Thus, staying this case pending a determination on the first-to-file issue will prevent the waste inherent in allowing duplicative and potentially unnecessary parallel proceedings to move forward. *See, e.g., Citigroup, Inc.*, 97 F. Supp. 2d at 555 ("Staying the later-filed action serves to prevent the inefficiency and wastefulness of allowing duplicative litigation to proceed in two different fora."); *see also Noble*, 2014 U.S. Dist. LEXIS 162643, at *16 ("This Court therefore defers to the Illinois Court's determination of where the claims should be litigated. Accordingly, the proceedings before this Court are stayed pending the Illinois Court's decision.").

Second, allowing this case to move forward before that time creates a significant risk of inconsistent judicial decision, as the initial issue that Your Honor would necessarily have to determine if this matter were to go forward would be the first-to-file issue.

Third, staying this case would otherwise preserve valuable judicial resources. If Judge Jones concludes that the Washington Action is the first-filed action, there will likely be no need for Your Honor to entertain any issues in this matter other than Cedar Grove's subsequent motion to transfer or dismiss this case. Prematurely pushing

this case forward would, on the other hand, force Cedar Grove to file a motion to dismiss in the New York Action raising the threshold issue of lack of jurisdiction. The parties will not need to waste time and money addressing that jurisdictional issue whatsoever if Judge Jones determines that the Washington Action should proceed.

<u>Fourth</u>, Ironshore cannot seriously contend that a temporary stay of this case pending Judge Jones' ruling will impose any type of hardship on the parties. That issue is fully briefed and the parties have every reason to believe that a decision will be issued by Judge Jones in the short term.

In summary, temporarily staying this action conserves the resources of the parties and the Court, and best allows for the orderly and efficient resolution of the issues created by Ironshore's surreptitious filing of this unnecessary competing action in New York.

## IV. CONCLUSION

For the reasons stated above, Cedar Grove respectfully submits that the Court should stay this action pending a decision by the United States District Court for the Western District of Washington on Cedar Grove's pending Motion for Determination of Proper Forum Under First-to-File Rule.

Dated:   New York, New York
         April 2, 2015

                                    ZEICHNER ELLMAN & KRAUSE LLP

                                    By: _____
                                        Yoav M. Griver, Esq.
                                        Anthony I. Giacobbe, Jr., Esq.
                                        Attorneys for Defendants
                                        1211 Avenue of the Americas
                                        New York, NY  10036
                                        (212) 223-0400

TO:   ADAM STEIN, ESQ.
      Attorneys for Plaintiff
      Cozen O'Connor
      45 Broadway Atrium
      Suite 1600
      New York, NY  10006
      (212) 453-3728

#804796 v.2