Adam Stein, Esq.
COZEN O'CONNOR
45 Broadway Atrium
Suite 1600
New York, NY 10006
(212) 453-3728
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>     v.<br><br>CEDAR GROVE COMPOSTING, INC., CEDAR GROVE COMPOSTING FACILITY, and CEDAR GROVE, INC.,<br><br>      Defendants. | Case No.: 15-CV-975 (NRB) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR STAY PENDING WASHINGTON COURT RULINGS**

**COZEN O'CONNOR**
45 Broadway Atrium, Suite 1600
New York, NY 10006
Telephone: (212) 453-3728

# **TABLE OF CONTENTS**

                                                                                                          **Page**

I. INTRODUCTION ................................................................................................................1

II. STATEMENT OF FACTS ..................................................................................................3

    A. The Washington Action Concerns Claims-Handling Allegations Under the Primary Policy ........................................................................................................................... 3

    B. This Action Addresses Substantive Coverage under the Excess Policy, Under New York Law ................................................................................................................... 4

    C. Financial Prejudice Would Result From Any Stay Of This Action While Underlying Actions Proceed, Generating Expensive Defense Cost Bills .......................................... 7

III. ARGUMENT .......................................................................................................................7

    A. The "First Filed Rule" Does Not Apply in the First Instance, as the Two Actions Are Not Duplicative ............................................................................................................. 7

    B. The First-Filed Rule is Also Irrelevant Due to the Excess Policy's Forum Selection Clause ........................................................................................................................ 11

    C. The Law Does Not Support a Stay in Favor of an Action Deciding Distinct Issues ........ 12

IV. CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ............................................................................................. 9

*American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co.*,
  No. 11 Civ. 6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ........................................ 11

*Burns v. Gerber Products Co.*,
  2012 WL 8251405 (E.D. Wash. Sept. 4, 2012) .................................................................. 9

*Deston Songs LLC v. Wingspan Records*,
  No. 00 CV 8854 (NRB), 2001 WL 799811 (S.D.N.Y. July 16, 2001) ............................. 15

*Diascience Corp. v. Blue Nile, Inc.*,
  2009 WL 1938970 (S.D.N.Y. July 7, 2009) ........................................................... 10, 13, 15

*Dornoch Ltd. v. PBM Holdings, Inc.*,
  666 F. Supp.2d 366 (S.D.N.Y. 2009) ............................................................................... 11

*Elite Parfums Ltd. v. Rivera*,
  872 F. Supp. 1269 (S.D.N.Y. 1995) ................................................................................. 12

*Fed. Ins. Co. v. SafeNet, Inc.*,
  758 F. Supp. 2d 251 (S.D.N.Y. 2010) ......................................................................... 13, 14

*K2 Inv. Group, LLC v. American Guar. & Liab. Ins Co.*,
  22 N.Y.3d 578 (2014) ....................................................................................................... 10

*Koninklijke Philips Electronics v. Digital Works, Inc.*,
  358 F. Supp.2d 328 (S.D.N.Y. 2005) ............................................................................... 12

*Landis v. North Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................... 12, 13

*Leviton Mfg. Co. v. Reeve*,
  942 F. Supp. 2d 244 (E.D.N.Y. 2013) .............................................................................. 12

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2nd Cir. 2014) ........................................................................................... 12

*National Surety Corp. v. Immunex Corp.*,
  176 Wn.2d 872 (2013) ...................................................................................................... 14

*Nautilus Neurosciences, Inc. v. Fares,*
   2013 WL 3009488 (S.D.N.Y. June 14, 2013) ............................................................... 8, 9

*Quinn v. Walgreen Co.,*
   958 F. Supp.2d 533 (S.D.N.Y. 2013) ............................................................................... 8

*Stewart Organization, Inc. v. Ricoh Corp.,*
   487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ................................................... 12

**Statutes**

RCW 48.18.200 ..................................................................................................................... 12

RCW 48.18.200(1) ................................................................................................................. 12

Washington Consumer Protection Act and Insurance Fair Conduct Act .................................... 4

## I.     INTRODUCTION

On behalf of its policyholder, Ironshore has paid in excess of $2 million in legal and claims expense payments defending Cedar Grove against pollution-related claims in connection with Cedar Grove's operations in Washington State. As a result of such payments, the Ironshore Specialty primary policy is exhausted. Cedar Grove nevertheless seeks recovery of additional damages based on frivolous allegations of bad faith claims handling and alleged statutory violations in a lawsuit filed in Washington State (the "Washington Action"). In the Washington Action, Cedar Grove *does not* seek adjudication of the substantive coverage terms of the primary policy; rather, Cedar Grove seeks to *avoid* application of those terms in favor of a "coverage by estoppel" theory available only in Washington. Meanwhile, Ironshore commenced this action to determine its coverage obligations under the substantive terms of coverage of the excess policy, in a New York forum and under New York law, as agreed to by the parties and as the excess policy provides.

The Washington Action is limited to the now exhausted primary policy, and the complaint has never been amended to include the only policy at issue in this action – the excess policy. Because Ironshore has paid the full limit of the primary policy, Ironshore moved to dismiss the Washington action as moot. With that motion to dismiss already pending, having received the full limit of the primary policy, and without amending its complaint to include the excess policy, Cedar Grove filed a motion seeking a determination from the Washington court that the Washington Action is the "first-filed" of two competing actions. At the same time, it filed the instant motion seeking a "stay" of this action—not because the Washington Action had been adjudicated as "first-filed," but to provide the Washington court the opportunity to determine the point.

Thus, Cedar Grove's motion is founded on circular logic. Cedar Grove's request to stay this proceeding is based on its faulty premise that it has already prevailed on its (erroneous) argument that the "first-to-file" rule applies to two lawsuits that each address unique claims regarding different insurance policies, different legal theories, and different governing law; and that are each entitled to separate due process. Cedar Grove's formulation of the issue to be determined in Washington—"which of the two competing actions ... qualifies ... under the first-to-file rule"—begs the question of whether the two actions are "competing" in the first instance. The fact is that *neither* action is "competing," and that *neither* action is subject to the first-to-file rule at all.

Furthermore, even if the court were to view the two actions as somehow "competing," Cedar Grove's motion to dismiss would fail, because the excess policy contains a valid and enforceable forum selection clause that would preclude application of the "first-filed rule." Cedar Grove also claims it would obtain dismissal based on personal jurisdiction, but the law is abundantly clear that a party that agreed to a forum selection clause has submitted to personal jurisdiction in that forum.

Thus, Cedar Grove's "motion to stay" has nothing to do with promoting efficiency or eliminating duplicative litigation. Rather, Cedar Grove is moving for a "stay" to avoid an actual adjudication of multiple issues, including whether the forum selection clause requires adjudication of the excess policy in New York (it does), and ultimately, whether coverage under the excess policy exists (it does not). The parties contractually agreed to adjudicate disputes over the excess policy in New York, and Ironshore is entitled as a matter of right to proceed with this action, independent of the distinct issues being adjudicated in Washington.

2

## II. STATEMENT OF FACTS

### A. The Washington Action Concerns Claims-Handling Allegations Under the Primary Policy

The Washington Action lawsuit involves insurance coverage claims Cedar Grove made under its primary insurance policy, issued by Ironshore with a policy number of 001264601 for the policy period of January 15, 2013 to January 15, 2014, which has a limit of $2 million (Exhibit A to Complaint, hereinafter "Ironshore Primary Policy"). During January 2013, shortly after the policy period began, Cedar Grove tendered to Ironshore for a defense against four underlying lawsuits, consisting of two proceedings in Snohomish County and two proceedings in King County (hereinafter referred to as "Underlying Actions"). On August 20, 2014, Cedar Grove initiated litigation against Ironshore by filing a Complaint in Washington's King County Superior Court (attached as Exhibit B to Cedar Grove's Motion, hereinafter "Washington Complaint"). The Ironshore Primary Policy, and no other insurance policy, was referenced throughout. (Washington Complaint, Par. 1, 4, 7-11, 17, 19-20, 42, 45-47, 49 & 51). The Washington Action was timely removed to the U.S. District Court for the Western District of Washington and assigned to Judge Richard A. Jones.

It is undisputed that by mid-2014, Ironshore had issued in excess of $2 million for legal and claims expense payments for Cedar Grove's defense. Based on a February 2015 payments spreadsheet Ironshore has received from Cedar Grove's defense counsel, the law firm Patterson Buchanan Fobes & Leitch, Inc., P.S., Ironshore has paid defense costs **totaling over $4.5 million** through February 2015. *See* Stein Decl., Ex. C.

Despite these and other payments, Cedar Grove continues to maintain in the Washington Action that Ironshore's "failing to timely reimburse defense costs incurred" breached the Ironshore primary policy and constituted "bad faith" under Washington law. Rather than addressing substantive coverage under the terms of the primary policy, Cedar Grove instead

3

relies on its position that Ironshore is estopped from "asserting any defenses to coverage" based entirely on procedural improprieties. (Washington Complaint, XII.C. & Par. 17-40). For example, Cedar Grove alleges that Ironshore violated Washington bad faith law by wrongfully *asserting* a reservation of rights that the Underlying Actions may not allege covered claims (Washington Complaint, XII.C. & Par. 18-19), even though Ironshore has fully reimbursed defense costs and no settlement or judgment has yet occurred. Cedar Grove also alleges that Ironshore committed breaches of the Ironshore primary policy by failing to perform a reasonable investigation and by not properly reimbursing under its terms Cedar Grove's defense cost payments; and alleges it is entitled to relief under the Washington Consumer Protection Act and Insurance Fair Conduct Act (Washington Complaint, Par. 20, 46, 54 & 58).

Cedar Grove has never sought to amend its Washington Action to assert claims regarding Ironshore's excess insurance policy and is legally and contractually prohibited from doing so under the excess policy's "Choice of Forum" provision, discussed below.

**B.      This Action Addresses Substantive Coverage under the *Excess* Policy, Under New York Law**

On January 9, 2015, Ironshore filed in the Supreme Court of the State of New York, County of New York, the above-captioned declaratory relief action regarding the Underlying Actions and the Environmental Excess Liability insurance policy Ironshore issued with a policy number of 001264701 (Exhibit B to Complaint, hereinafter "Ironshore Excess Policy"). Ironshore here seeks a ruling that would establish, under Ironshore's excess policy and New York law: (1) the extent of excess insurance owed, if any, *under the Excess Policy* and (2) whether Ironshore can recover from Cedar Grove payments already made *solely under the Excess Policy*. These issues are *not* being adjudicated in the Washington action, which relates solely to the primary policy and to Ironshore's alleged procedural improprieties under Washington's unique "bad faith" law.

4

The Ironshore Excess Policy contained a "Choice of Forum" clause, stating in Section IV. Conditions as follows:

> **D.   CHOICE OF FORUM**
>
> In the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that any such litigation shall take place in the appropriate federal or state court located in New York, New York and any arbitration or other form of dispute resolution shall take place in New York, New York.

Ironshore's New York Complaint was filed in New York state court in accordance with the requirements of this Choice of Forum clause. The Ironshore Excess Policy also contained the following Choice of Law clause:

> **E.   CHOICE OF LAW**
>
> In the event that the insured and we have any dispute concerning or relating to this policy including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles. The terms and conditions of this policy shall not be deemed to constitute a contract of adhesion and shall not be construed in favor of or against any party hereto by reason or authorship or otherwise.

Thus, Cedar Grove's assertion that the "excess policy followed the same terms and conditions as Ironshore's primary policy" is both wrong and irrelevant. The following language in Section I.A.1. of the excess policy confirms that the excess policy—like any "follow form" policy—*does not* incorporate the primary policy's terms to the extent the two policies conflict (which they do, as to choice of forum and choice of law):

5

> However, coverage under this policy *is subject to* the premium, limits of liability, retention, policy period, warranties, exclusions, limitations *and any other terms and conditions of this policy* including any and all endorsements attached hereto, inconsistent with *or supplementary to* the controlling underlying insurance.

(emphasis added).

Cedar Grove's assertion is not only wrong, it is irrelevant. Even to the extent the excess policy *does* incorporate the terms of the primary policy delineating the scope of coverage, Cedar Grove does not seek adjudication of those terms in the Washington action. Rather, Cedar Grove seeks to *avoid* adjudication of those terms in favor of an automatic "estoppel" rule based on statutory and "bad faith" law unique to Washington. The following issues were pled in New York, and nowhere else:

- That the definitions of "clean-up costs" and "emergency response expenses" relating to a "pollution incident" are not satisfied by the Underlying Actions, such that Cedar Grove is not entitled to coverage under Coverages B and C of Coverage Part III. (First Cause of Action);

- That Cedar Grove is not entitled to coverage under Exclusions "f. Noncompliance" and "h. Previously Reported Claim." (Second Cause of Action & Fourth Cause of Action);

- That Cedar Grove's Underlying Actions are not claims "first made" against Cedar Grove during the policy period of the Ironshore excess policy. (Third Cause of Action);

- That Ironshore's payments are not "legal and claims expense payments" under the Ironshore excess policy, or are otherwise precluded by public policy. (Fifth Cause of Action);

- That Ironshore has the right to control Cedar Grove's defense in the Underlying Actions pursuant to the Ironshore excess policy and New York law. (Sixth Cause of Action); and

- That Ironshore has the right to recover its payments for Cedar Grove's non-covered defense costs and/or indemnity paid in connection with the Underlying Actions, under the Ironshore excess policy and New York law. (Seventh Cause of Action).

(Complaint, Par. 18 – 45).

6

Moreover, even if the two courts were to interpret the coverage terms differently, this would not create an irresolvable conflict, because the rulings would concern different contracts subject to different states' laws.

### C. Financial Prejudice Would Result From Any Stay Of This Action While Underlying Actions Proceed, Generating Expensive Defense Cost Bills

The financial consequences of this Court staying proceedings, instead of proceeding to determine whether coverage is owed under the Ironshore Excess Policy, involve hundreds of thousands of dollars in defense costs. Based on a February 2015 payments spreadsheet Ironshore has received from Cedar Grove's defense counsel, the law firm Patterson Buchanan Fobes & Leitch, Inc., P.S., Cedar Grove's defense counsel has received payments from Ironshore, through February 2015, **totaling over $4.5 million.** *See* Stein Decl., Ex. C. If Ironshore is prevented from obtaining rulings in this Court, significant defense cost amounts will continue to be incurred under the Ironshore Excess Policy during any delay that is occasioned by a stay of this action. Based on the February 2015 payments spreadsheet, defense counsel's invoices issued during their last six months of litigating the Underlying Actions have totaled almost *$294,000 as the average for one month* of defense counsel's bills.

### III. ARGUMENT

### A. The "First Filed Rule" Does Not Apply in the First Instance, as the Two Actions Are Not Duplicative

Cedar Grove's only specific reason for seeking a stay is to allow the Washington Court to apply the "first-filed rule" as to two allegedly duplicative actions: the Washington Action and this action. But that argument rests on the incorrect premise that the two actions are duplicative in the first place. In reality, they are *not* duplicative. The Court should not stay litigation for the purpose of applying a rule that has no application here.

7

Both this Court and the Second Circuit Court of Appeals have cautioned against application of "first-filed" rules to assertedly duplicative actions that actually involve non-identical issues. *Quinn v. Walgreen Co.*, 958 F. Supp.2d 533, 539 (S.D.N.Y. 2013) instructs that "the court must carefully consider whether the suits are, in fact, duplicative, and must 'not [...] be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same.'" *Id.*, 958 F. Supp.2d at 539 (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000)).

In *Nautilus Neurosciences, Inc. v. Fares*, 2013 WL 3009488 (S.D.N.Y. June 14, 2013), the court considered whether to stay civil proceedings in the Southern District of New York until an action that had been filed two months before, in Delaware, was concluded. Defendant relied on the first-filed rule and its presumption that the earlier-filed action in Delaware would take priority. Mindful of the Second Circuit's admonitions to confirm that the issues in the two actions are "virtually the same" before applying the first-filed action rule, the court engaged in a detailed comparison of the New York and Delaware actions. Because the issues being considered in Delaware did not negate consideration or otherwise serve to invalidate the issues in the New York action, and relatedly because the evidence necessary to prove the Delaware action would not establish the New York action, the court concluded that "the first-filed rule does not govern the relationship between this case and the Delaware action," and denied the stay. *Id.*, at *3.

The Washington Complaint contains 20 paragraphs of allegations entitled "Ironshore's Efforts to Improperly Undermine Cedar Grove's Defense For Its Own Financial Benefit," in support of its request for a "judgment estopping [Ironshore]" from asserting any defense or indemnity issues because its "conduct amounted to bad faith." (Washington Complaint, Par. 21-40, XII.B.). None of the evidence necessary to prove these 20 paragraphs of alleged bad faith

8

conduct in Washington will resolve the causes of action on file here regarding coverage under the excess policy. Further, the Washington Complaint seeks legal determinations that are clearly tied to provisions of Washington law. By contrast, this New York action relies on New York law and seeks remedies that are only available under New York law. As in *Nautilus Neurosciences*, the questions being answered in the Washington Action regarding alleged "bad faith" while Ironshore funded the defense of Cedar Grove under the Ironshore Primary Policy, will not decide the questions of coverage under New York law that this Court must answer here.

Washington courts have issued rulings similar to *Nautilus Neurosciences, Inc.*, and Ironshore cited such supporting case authority to Judge Jones in its March 2015 opposition brief. In *Burns v. Gerber Products Co.*, 2012 WL 8251405 (E.D. Wash. Sept. 4, 2012), the court held that a single unique claim asserted in the Washington case rendered two allegedly duplicative cases not similar enough to justify applying the first-to-file rule. *Burns*, 2012 WL 8251405 at *2. Even Cedar Grove's own cited Ninth Circuit authority cautions that "reversible error" would be committed by any trial court that applies the first-to-file rule to issues in two lawsuits that are not the same: "…if the issues or parties involved in the two suits were not the same, adherence to the first-to-file rule *would* be reversible error for it would constitute a misapplication of the law." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 n.13 (9th Cir. 1991) (*emphasis* in original).

Cedar Grove has urged this Court (as well as Judge Jones) to apply a first-to-file rule that has no valid application to the two lawsuits presented here. The issues in the two lawsuits are not the same, and the mere existence of "rough resemblance" between a small number of Complaint allegations, beginning and ending with each Complaint's reference to the term "property damage," cannot suffice. Cedar Grove's chart entitled "Mirror Image Allegations," submitted in the Washington Action and newly filed herein (as Exhibit E to its motion, without

9

any support from its unidentified author), does nothing to change this conclusion. The chart's first section relies on the mere prefatory language in each Complaint, stating that each seeks declaratory relief, and its last section relies on the mere coincidence of both Complaints referencing for different purposes the figure "$500,000." In between, Cedar Grove's chart disregards that the gravamen of Cedar Grove's Washington Complaint is "coverage by estoppel" under Washington in a bad faith lawsuit regarding the Ironshore Primary Policy, while the purpose of this action is to apply New York law, which rejects "coverage by estoppel," to determine the *actual* extent of coverage available under the Ironshore Excess Policy for the Underlying Actions. See *K2 Inv. Group, LLC v. American Guar. & Liab. Ins Co.*, 22 N.Y.3d 578 (2014). Cedar Grove's only allegation about "property damage" coverage under the Ironshore primary policy, as set forth in Par. 18 and XII.C. of the Washington Complaint, is that Ironshore wrongfully asserted a reservation of rights and *that very assertion*, as a matter of Washington "bad faith" law, estops Ironshore from disputing actual coverage under the primary policy. That rather illogical claim has no merit even under Washington law; but it certainly has no bearing on the determination sought here regarding actual coverage under the excess policy pursuant to New York law.

Cedar Grove also relies heavily on the fact that both this action and the Washington Action refer to the same "Underlying Actions." (Motion, at 1, 6). Cedar Grove ignores the fact that the *issues to be decided* in the two lawsuits are entirely distinct. Since there is no overlap in the *issues* between the two lawsuits, a stay is clearly not warranted, especially considering the substantial prejudice Ironshore would incur. See *Diascience Corp. v. Blue Nile, Inc.*, 2009 WL 1938970, at *5 (S.D.N.Y. July 7, 2009) (discussed *infra*).

In Cedar Grove's cited cases, such as *Noble* and *Erickson Beamon Ltd.*, there was no dispute that the actions involved identical or substantially similar issues. Here, there is more

than a mere dispute that the issues are distinct; the two Complaints clearly state different issues under different contracts, under the laws of different states. Either party could prevail in either action and there would be no conflict. Thus, the "first filed" rule has no application here and does not justify a stay.

**B.     The First-Filed Rule is Also Irrelevant Due to the Excess Policy's Forum Selection Clause**

Even if this Court were to apply the "first filed rule" analysis, that analysis would require that Cedar Grove submit to this Court's jurisdiction due to the excess policy's valid and enforceable forum selection clause.

The New York Choice of Forum clause's impact on Cedar Grove's motion is clear and dispositive: even if this Court assumed that a lawsuit in another state was the first to be filed, "...because the forum selection clause unequivocally requires the parties to litigate any dispute arising under the Policy in New York, any effort by [insured] to dismiss this action in favor of the Virginia action must fail." *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp.2d 366, 370 (S.D.N.Y. 2009). In *Dornoch* (which involved more overlap in the issues than this case), the court held that the forum selection clause in favor of New York precluded dismissal of the New York action, even if the Virginia action was filed first. *Id.* at 370. Moreover, the court held that the forum selection clause was "dispositive" of the issue, regardless of other considerations. *Id.*

The court in *Dornoch* further noted even if it were not for the forum selection clause, there was insufficient overlap because—as here—the two cases involved different issues under different policies (albeit related to the same underlying actions). *Id.* at 371-72.

For the same reason, Cedar Grove's threatened motion to dismiss for lack of personal jurisdiction rings hollow. Longstanding federal authority holds that a forum selection clause such as the Choice of Forum clause in the Ironshore Excess Policy confers personal jurisdiction on the courts of the chosen forum, as a matter of law. *See, e.g., American S.S. Owners Mut.*

11

*Protection and Indem. Ass'n, Inc. v. Am. Boat Co.*, No. 11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012); *Leviton Mfg. Co. v. Reeve*, 942 F. Supp. 2d 244, 255 (E.D.N.Y. 2013); *Koninklijke Philips Electronics v. Digital Works, Inc.*, 358 F. Supp.2d 328, 332 (S.D.N.Y. 2005).

Although Cedar Grove's Motion neglected to mention both the Choice of Forum and Choice of Law clause of the Ironshore Excess Policy, it is reasonably anticipated that Cedar Grove will invoke a Washington statute (RCW 48.18.200) in its reply brief and argue that it voids every provision of both clauses. Any such attempt to void the Choice of Forum clause of the Ironshore Excess Policy will fail, because enforceability of a forum selection clause is a procedural issue decided by federal law, and state statutes have no relevance. *Martinez v. Bloomberg LP*, 740 F.3d 211, 228 (2nd Cir. 2014); *Elite Parfums Ltd. v. Rivera*, 872 F. Supp. 1269, 1273-74 (S.D.N.Y. 1995) (another state's law could not render New York choice of forum clause invalid in Federal court); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (federal law governs application of forum selection clause). Ironshore also disputes whether the Washington statute applies on its face to issues (such as estoppel and reimbursement of non-covered defense costs) which have nothing to do with *construction* of the policy. *See* RCW 48.18.200(1) (precluding enforcement in Washington of a clause requiring the policy "to be *construed* according to the laws of any other state"). In any event, the extent to which RCW 48.18.200 controls a Washington state court is of no moment – it is simply not governing authority in this Court.

C.     **The Law Does Not Support a Stay in Favor of an Action Deciding Distinct Issues**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). However, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go

forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Even if another case will define the parties' rights, the case at hand should only be stayed in "rare circumstances." *Id. Landis* requires that Cedar Grove's motion for stay "must make out a clear case of hardship or inequity in being required to go forward" in this Court. *Id.*

*Landis* rejected a stay that was tied to a pending decision in another jurisdiction, despite the fact that the pending ruling would settle many and simplify all issues defining the rights of the parties, because the stay requested was beyond the reasonable need shown by the suppliant's motion. *Landis*, 299 U.S. at 256-57. Cedar Grove's showing consists only of vague references to "hardship," as though the burden were on Ironshore. (Motion, at 11).

Furthermore, unlike in *Landis*, the Washington Action will *not* resolve the issues presented in this action. This action concerns Ironshore's right and obligations under a separate policy governed by a different state's laws. No ruling in the Washington action would conflict with any ruling in the New York action, even if the two courts' rulings interpreted similar terms differently. *See Diascience Corp. v. Blue Nile, Inc.*, 2009 WL 1938970, at *5 (S.D.N.Y. July 7, 2009). In *Diascience*, the two parties, both diamond sellers, filed separate actions against each other in Washington and New York claiming false advertising and related claims. The defendant in the New York action moved for a stay, and this Court denied the motion. The Court reasoned that despite the factual overlap, the issues were distinct, and one court's ruling regarding one party's website would not conflict with the other court's ruling regarding the other party's website.

Here, a ruling regarding "coverage by estoppel" or exhaustion of the primary policy in the Washington Action will not conflict with this Court's ruling regarding the excess policy, no matter which party prevails in each action. *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d

251, 260 (S.D.N.Y. 2010). In *SafeNet*, the court held that the primary insurer was not a necessary party in the action pending before it on the excess policy, because a ruling for coverage on the primary policy would not conflict with a ruling for no coverage under the excess policy. The court stated that it "simply cannot foresee a scenario in which any of the existing parties would be unable to comply with this Court's order regarding the enforceability of the Excess Policies without breaching another court's order concerning the same issues." *Id.* at 260. Similarly here, even though both actions concern the same underlying actions, they require determination of different issues under different policies. Furthermore, it is unclear there will be any continuing proceedings in the Washington Action at all, once Judge Jones issues his ruling on Ironshore's November 2014 motion to dismiss that action.

Finally, Cedar Grove's Motion completely ignores the financial prejudice that would be caused by its requested stay, which is clear from nearly $300,000 in defense counsel bills being incurred every month. Given that several months have passed and Judge Jones has not yet ruled on Ironshore's initial motion to dismiss the Washington Action, Cedar Grove provides no basis for calling its proposed stay, tied to its motion that was briefed in March 2015, "short term." (Motion, at 11). Further, where New York law applies to Ironshore's defense obligations under the Ironshore Excess Policy, as well as its recoupment rights, it is uncertain whether Ironshore will ultimately be responsible for such defense costs or whether Cedar Grove will be. This is because the Washington Supreme Court has held that an insurer defending under a reservation of rights cannot obtain reimbursement of its paid defense costs, even if that insurer never owed defense obligations to begin with (in *National Surety Corp. v. Immunex Corp.*, 176 Wn.2d 872 (2013)), but by contrast, the New York Court of Appeals has not settled this issue. At a minimum, a judgment in this action would offer relief from this uncertainty for both Cedar Grove and Ironshore. *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d at 260. It is therefore in

14

*both* parties' interests, and more consistent with proper ends of justice including avoiding undue prejudice, for this matter to proceed expeditiously.

Meanwhile, denying Cedar Grove's motion to stay would impose no prejudice at all on Cedar Grove, because duplicative discovery is impossible. The parties would doubtless agree that any discovery obtained in this action could be used in the Washington action, to the extent it is relevant there. To the extent the discovery is *not* relevant there, that is because the actions are not duplicative.

Thus, the Washington Action does not conflict with this action, and will not resolve this action. For similar reasons, Cedar Grove has not and cannot identify any genuine hardship that would result from the two matters proceeding simultaneously. Accordingly, Cedar Grove is not entitled to a stay as a matter of Federal law.

## IV.   CONCLUSION

There is no need and no basis for Cedar Grove to prolong litigation by staying this action, especially where the two contracts between the parties recognized that different laws, with New York law expressly contracted to control the Ironshore Excess Policy, would have to be applied to the issues. Further, it is unclear there will be any continuing proceedings in the Washington Action at all, once Judge Jones issues his long-awaited ruling on Ironshore's November 2014 motion to dismiss that action. As this Court has done in the past, it should reject the discretionary stay being requested by the defendant here. *See, e.g., Diascience Corp. v. Blue Nile, Inc.*, No. 08 CV 9751 (NRB), 2009 WL 1938970 (S.D.N.Y. July 7, 2009); *Deston Songs LLC v. Wingspan Records*, No. 00 CV 8854 (NRB), 2001 WL 799811 (S.D.N.Y. July 16, 2001).

Dated:	New York, New York
	April 16, 2015

COZEN O'CONNOR

By: ___s/ Adam I. Stein___
    Adam I. Stein, Esq.
    Attorneys for Plaintiff
    45 Broadway Atrium
    Suite 1600
    New York, NY 10006
    (212) 453-3728

*Attorneys for Plaintiff*

TO:

Yoav M. Griver, Esq.
Anthony I. Giaccobe Jr., Esq.
Zeichner Ellman & Krause LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 223-0400

*Attorneys for Defendants*