# EXHIBIT B



## IRONSHORE SPECIALTY INSURANCE COMPANY

Mailing Address:
75 Federal Street
5th Floor
Boston, MA 02110
Toll Free: (877) IRON411

This contract is registered and delivered as a surplus line coverage under the insurance code of the state of Washington, enacted in 1947. It is not issued by a company regulated by the Washington state insurance commissioner and is not protected by any Washington state guaranty fund law.

## ENVIRONMENTAL EXCESS LIABILITY DECLARATIONS

Policy Number: 001264701                                    Renewal of Policy Number: 001264700

| | | |
|---|---|---|
| Item 1. | Named Insured & Mailing Address: | Emerald Services, Inc. 7343 East Marginal Way South Seattle, WA 98108 |
| Item 2. | Policy Period: | Effective: January 15, 2013  Expiration: January 15, 2014 12:01 a.m. time at your mailing address shown above |
| Item 3: | LIMITS OF INSURANCE | |
| | a. Each Event Limit | $10,000,000 |
| | b. Aggregate Limit (See Section II.A.) | $10,000,000 |
| Item 4. | LIMITS OF UNDERLYING INSURANCE | |
| | a. Each Event Limit | $1,000,000 |
| | b. Aggregate Limit | See Schedule of Underlying Insurance |
| Item 5. | CONTROLLING UNDERLYING INSURANCE | |
| | Coverage | See Schedule of Underlying Insurance |
| | Policy Number | See Schedule of Underlying Insurance |
| | Insurer | See Schedule of Underlying Insurance |
| | Policy Period | See Schedule of Underlying Insurance |
| | Limit of Insurance | See Schedule of Underlying Insurance |

IE.DEC.EXCESS.001 (10/10) Includes copyrighted material of Insurance Service Office, Inc. with its permission    Page 1 of 3

IRONSHOREPOL-00148

| | | |
|---|---|---|
| Item 6. | | |
| | **Policy Premium:** | $422,210.00 |
| | **Premium for Acts of Terrorism (TRIA):** | Not Purchased |
| | **Total Premium (Including TRIA):** | $422,210.00 |

*Compliance with all surplus lines placement requirements, including stamping the Policy and collection and payment of surplus lines taxes, is the responsibility of the broker.*

| | | |
|---|---|---|
| | **Minimum Earned Premium:** | $0 |
| Item 7. | **Broker & Mailing Address:** | New Day Underwriting Managers LLC<br>33 Third Street, Suite 201<br>Bordentown, NJ  08505 |
| Item 8. | **Policy Coverage Form:** | IE.COV.EEL.001 (0409) Excess Coverage Form |
| | **Endorsements:** | See Schedule of Endorsements |

This is to certify that the attached is a true and accurate copy of the policy issued to you by Ironshore SPECIALTY INS. Co.
Signature _____

Date: February 27, 2013
MO/DAY/YR.

Authorized Representative

IRONSHOREPOL-00149

IE.DEC.EXCESS.001 (10/10)   Includes copyrighted material of Insurance Service Office, Inc. with its permission   Page 2 of 3

**Named Insured:**        Emerald Services, Inc.

**Policy Number:**        001264701

**Effective 12:01 AM:**   January 15, 2013

## SCHEDULE OF ENDORSEMENTS

**Endorsement Number – Edition Date – Form Name**

1. IE.PN.ALL.002 (1010) NOTICE OF CLAIM
2. IE.END.ALL.002 (0409) TERRORISM EXCLUSION
3. IE.PN.EXCESS.001 (0409) SCHEDULE OF UNDERLYING INSURANCE
4. MANUSCRIPT: MCS-90 ENDORSEMENT
5. IE.END.EXCESS.001 (04/09) NON-FOLLOWED COVERAGE, SECTION OR CLAUSE

IE.DEC.EXCESS.001 (10/10)   Includes copyrighted material of Insurance Service Office, Inc. with its permission   Page 3 of 3

IRONSHOREPOL-00150



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Endorsement # 1

**Policy Number:** 001264701
**Insured Name:** Emerald Services, Inc.

**Effective Date of Endorsement:** January 15, 2013

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CLAIM AND NOTICE REPORTING

Subject to the claims and notice reporting provisions within the policy, claim and notice reports may be given in writing via:

**POSTAL SERVICE to:**
Ironshore Environmental Claims CSO
175 Powder Forest Drive, 1st Floor
Weatogue, CT 06089

**E-MAIL to:**
Ironenviroclaims@ironshore.com

**FAX to:**
(877) 371-8963

By phone via:
**24 Hour Claims Phone Number:**
(888) 292-0249

ALL OTHER TERMS, CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

February 27, 2013
Date

IE.PN.ALL.002 (10/10)    Includes copyrighted material of Insurance Services, Inc. with its permission                Page 1 of 1

IRONSHOREPOL-00151



### IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Endorsement # 2

**Policy Number:** 001264701  **Effective Date of Endorsement:** January 15, 2013
**Insured Name:** Emerald Services, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

# TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

SITE POLLUTION INCIDENT LEGAL LIABILITY SELECT (SPILLS)
CONTRACTORS ENVIRONMENTAL LEGAL LIABILITY (CELL)
ENVIRONMENTAL PROTECTIVE INSURANCE COVERAGE PACKAGE (EPIC PAC)
ENVIRONMENTAL EXCESS LIABILITY

It is hereby agreed that the policy is amended as follows

1.  The following Exclusion is added:

    This insurance does not apply to:

    TERRORISM

    **Any injury or damage** arising, directly or indirectly, out of **terrorism**

2.  For the purposes of this endorsement, the following definitions are added:

    **Any injury or damage** means any injury or damage covered under the policy and includes but is not limited to **bodily injury, property damage, environmental damage, remediation expense, emergency response expense, personal and advertising injury**, negligent acts, errors or omissions or **professional incident** as may be defined in the policy.

    **Terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion. Terrorism includes an act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.

IE.END.ALL.002 (04/09)    Includes copyrighted material of Insurance Services Offices, Inc. with its permission.    Page 1 of 2

IRONSHOREPOL-00152

ALL OTHER TERMS, CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

February 27, 2013
Date

IE.END.ALL.002 (04/09)    Includes copyrighted material of Insurance Services Offices, Inc. with its permission.    Page 2 of 2

IRONSHOREPOL-00153



## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Endorsement # 3

Policy Number: 001264701  
Insured Name: Emerald Services, Inc.

Effective Date of Endorsement: January 15, 2013

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ENVIRONMENTAL EXCESS LIABILITY SCHEDULE OF UNDERLYING INSURANCE

CONTROLLING UNDERLYING INSURANCE

Coverage: GENERAL LIABILITY AND POLLUTION LIABILITY; ENVIRONMENTAL PROTECTION INSURANCE COVERGE PACKAGE (EPIC Pac)
Policy Number:   001264601
Insurer:                Ironshore Specialty Insurance Company
Policy Period:     From: 01/15/13  To: 01/15/14
Limits of Insurance:
$1,000,000 Each Occurrence Limit-COVERAGE PART I: Coverage A,B,C
$1,000,000 Each Occurrence Limit-COVERAGE PART I: Coverage D,E,F
$1,000,000 Contractors Pollution Liability Each Occurrence Limit
$1,000,000 Personal and Advertising Injury Limit: Any one Person or Organization
$1,000,000 Employee Benefits Administration Liability Limit: Each Employee
$1,000,000 Site Pollution Liability Limit
$2,000,000 Products Completed Operations Aggregate
$2,000,000 General Aggregate

Coverage: AUTOMOBILE LIABILITY – All States Except Hawaii
Policy Number:   13AAS08118
Insurer:                Alaska National Insurance Company
Policy Period:     From: 01/15/13  To: 01/15/14
Limits of Insurance:
$2,000,000 Combined Single Limit

Coverage: AUTOMOBILE LIABILITY - Hawaii
Policy Number:   MWTB21908
Insurer:                Old Republic Insurance Company
Policy Period:     From: 01/15/13  To: 01/15/14
Limits of Insurance:
$2,000,000 Combined Single Limit

Coverage: EMPLOYERS LIABILITY
Policy Number: WC1610203
Insurer: Commerce & Industry Insurance Company
Policy Period: From: 01/15/13 To: 01/15/14
Limit of Insurance:
$1,000,000 Bodily Injury by Accident: Each Accident
$1,000,000 Bodily Injury by Disease: Policy Limit
$1,000,000 Bodily Injury by Disease: Each Employee

Coverage: EMPLOYERS LIABILITY - WA
Policy Number: 13AWU08694
Insurer: Alaska National Insurance Company
Policy Period: From: 01/15/13 To: 01/15/14
Limit of Insurance:
$1,000,000 Bodily Injury by Accident: Each Accident
$1,000,000 Bodily Injury by Disease: Policy Limit
$1,000,000 Bodily Injury by Disease: Each Employee

Coverage: EMPLOYERS LIABILITY
Policy Number: B5JH83637
Insurer: Atlantic Specialty Insurance Company
Policy Period: From: 01/15/13 To: 01/15/14
Limit of Insurance:
$900,000 Bodily Injury by Accident: Each Accident
$900,000 Bodily Injury by Disease: Policy Limit
$900,000 Bodily Injury by Disease: Each Employee

OTHER UNDERLYING INSURANCE

None

ALL OTHER TERMS, CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

February 27, 2013
Date



## IRONSHORE SPECIALTY INSURANCE COMPANY
Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Endorsement # 4

Policy Number: 001264701  
Insured Name: Emerald Services, Inc.

Effective Date of Endorsement: January 15, 2013

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MCS 90 ENDORSEMENT

This endorsement modifies insurance provided under the following:

ENVIRONMENTAL EXCESS LIABILITY

It is hereby agreed that the MCS 90 Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980 is included as Endorsement #4 to this Policy.

ALL OTHER TERMS, CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____
Authorized Representative

February 27, 2013
Date

MANUSCRIPT: MCS 90 ENDORSEMENT                                                              Page 1 of 1

IRONSHOREPOL-00156

Case 1:15-cv-00975-NRB   Document 11-2   Filed 04/16/15   Page 11 of 19

**ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

Form Approved
OMB No. 2125-0074

Issued to EMERALD ALASKA, INC DBA Emerald Services, Inc. of 7343 East Marginal Way South, Seattle, WA, 98108

Dated at One State Street Plaza, New York, NY, 10004 this 15th day of, Jan , 20 13

Amending Policy No 001264701 Effective Date 01/15/2013

Name of Insurance Company Ironshore Specialty Insurance Company
One State Street, 7th Floor, New York, NY, 10004

Telephone Number (_____) 6468266636 . Countersigned by Stacey Varner
Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "☒" for the limits shown:

☐ This insurance is primary and the company shall not be liable for amounts in excess of $ NA for each accident.

☒ This insurance is excess and the company shall not be liable for amounts in excess of $ 3,000,000.00 for each accident in excess of the underlying limit of $ 2,000,000.00 for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission (ICC), the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of a particular date. The telephone number to call is:_____.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date the notice is received by the ICC at its office in Washington, D.C.).

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

ACCIDENT includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

MOTOR VEHICLE means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

BODILY INJURY means injury to the body, sickness, or disease to any person, including death resulting from any of these.

ENVIRONMENTAL RESTORATION means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

PROPERTY DAMAGE means damage to or loss of use of tangible property.

PUBLIC LIABILITY means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to the type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility. THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

Form MCS-90 (Over) IRONSHOREPOL-00157

SCHEDULE OF LIMITS
Public Liability

| Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|
| (1) For-hire (in interstate or foreign commerce). | Property (nonhazardous). | $ 750,000 |
| (2) For-hire and Private (in interstate, foreign, or intrastate commerce). | Hazardous substances transported in cargo tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Class A or B explosives, poison gas (Poison A), liquefied compressed gas or compressed gas; or highway route controlled quantity radioactive materials. | 5,000,000 |
| (3) For-hire and Private (in interstate or foreign commerce: in any quantity) or (in intrastate commerce: in bulk only). | Oil listed in 49 CFR 172.101, hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | 1,000,000 |
| (4) For-hire and Private (in interstate or foreign commerce). | Any quantity of Class A or B explosives, any quantity of poison gas (Poison A), or highway route controlled quantity radioactive materials. | 5,000,000 |

Note: The type of carriage listed under (1), (2), and (3) apply to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with gross vehicle weight rating of less than 10,000 pounds.

SCHEDULE OF LIMITS
Public Liability
For-hire motor carriers of passengers operating in interstate or foreign commerce

| Vehicle Seating Capacity | Minimum Insurance |
|---|---|
| (1) Any vehicle with a seating capacity of 16 passengers or more. | $ 5,000,000 |
| (2) Any vehicle with a seating capacity of 15 passengers or less. | 1,500,000 |

IRONSHOREPOL-00158



**IRONSHORE SPECIALTY INSURANCE COMPANY**

Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Endorsement # 5

**Policy Number:** 001264701  **Effective Date of Endorsement:** January 15, 2013
**Insured Name:** Emerald Services, Inc.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NON-FOLLOWED COVERAGE, SECTION OR CLAUSE

This endorsement modifies insurance provided under the following:

ENVIRONMENTAL EXCESS LIABILITY

It is hereby agreed that section **I. COVERAGES**, Paragraph **A.2.** is amended to include the following:

In no event shall this policy follow the terms, conditions, exclusions or limitations in the **controlling underlying insurance** or provide coverage under this with respect to or as a result of any of the following in the **controlling underlying insurance**:

f.  UTAH USED OIL POLLUTION LIABILITY ENDORSEMENT FOR SUDDEN OCCURRENCE
g.  UTAH USED OIL POLLUTION LIABILITY ENDORSEMENT FOR COMBINED SUDDEN AND NON-SUDDEN OCCURRENCES
h.  UTAH USED OIL TRANSPORTER POLLUTION LIABILITY ENDORSEMENT FOR SUDDEN OCCURRENCE

ALL OTHER TERMS, CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

_____          February 27, 2013
Authorized Representative                Date

IE.END.EXCESS.001 (04/09)                                                  Page 1 of 1

IRONSHOREPOL-00159



**IRONSHORE SPECIALTY INSURANCE COMPANY**
Mailing Address:
75 Federal Street
5th Floor
Boston, MA   02110
Toll Free: (877) IRON411

Insured Name:  Emerald Services, Inc.
Policy Number: 001264701

# ENVIRONMENTAL EXCESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as such under the **controlling underlying insurance**. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the **controlling underlying insurance.**

Defined terms, other than headings, appear in bold face type. Refer to **SECTION V – DEFINITIONS**. The headings do not constitute terms or conditions of this policy and are included solely for convenience. The headings shall not in any manner modify or otherwise affect any of the provisions of this policy

I. **COVERAGES**

   A. **INSURING AGREEMENT**

   1. We will provide the insured with Excess Liability coverage in accordance with the same terms, conditions, exclusions, limitations and warranties as are contained, as of the inception of this **policy period**, in the **controlling underlying insurance.**

      However, coverage under this policy is subject to the premium, limits of liability, retention, **policy period**, warranties, exclusions, limitations and any other terms and conditions of this policy including any and all endorsements attached hereto, inconsistent with or supplementary to the **controlling underlying insurance.**

   2. In no event shall this policy follow the terms, conditions, exclusions or limitations in the **controlling underlying insurance** or provide coverage under this policy with respect to or as a result of any of the following in the **controlling underlying insurance:**

      a. Cancellation, non-renewal or change in policy period provisions.

      b. Kidnap, Ransom or Extortion coverage

      c. Liberalization Clause

         Any clause stipulating automatic expansion of coverage with or without an additional premium because of, but not limited to, legislative acts, acts of insurance regulatory authorities or an insurer's policy revision.

IRONSHOREPOL-00160

    d. **Medical Payments**

       Any medical payment coverage in which payments are not predicated on fault.

    e. **No Fault Coverage**

       Any automobile no-fault coverage, personal injury protection or uninsured or underinsured motorists coverage.

    f. **Sublimit of Insurance**

       Any sublimit of insurance unless coverage for such sublimit of insurance is specifically endorsed to this policy.

## II. LIMITS OF LIABILITY

A. The Aggregate Limit of insurance stated in **Item 3.b.** of the Declarations of this policy is the most we will pay for all damages covered under this policy, except automobile liability if it is not subject to an aggregate limit of liability in the **controlling underlying insurance**.

B. Subject to **A.** above, the Each **Event** Limit of insurance stated in **Item 3.a.** of the Declarations of this policy is the most we will pay for all damages arising out of any one **event.**

C. Defense expenses and costs to which this policy applies shall not reduce the limits of insurance stated in **Item 3.** of the Declarations, except to the extent such defense expenses and costs reduce the limits of insurance of the **controlling underlying insurance.**

## III. LIMITS OF UNDERLYING INSURANCE

A. The Limits of Insurance stated in **Item 3.** of the Declarations of this policy apply in excess of:

    1. The total of the limits of insurance of **underlying insurance** applicable to any one **event** as stated in the Each **Event** Limit in **Item 4.a.** of the Declarations.

    2. The total of the Aggregate Limits of insurance of **underlying insurance** as stated in the Aggregate Limit in **Item 4.b..** of the Declarations.

    3. The self-insured retention, retained limit, or deductible (whether added to or deducted from the limits of insurance) of the **controlling underlying insurance**, if any, where the Aggregate Limit determined in **2.** above, has been exhausted.

B. This policy will not apply in excess of any reduced or exhausted limits of insurance of the **underlying insurance** to the extent that such reduction or exhaustion is caused by:

    1. Payment of amounts that are not covered under this policy; and

    2. Uncollectibility in whole or in part of the limits of insurance of **underlying insurance**.

## IV. CONDITIONS

A. ASSISTANCE AND COOPERATION

    1. We shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the insured to which this policy may apply upon exhaustion of the applicable limits of insurance of the **underlying insurance.** If we have exercised such right, we may withdraw from the defense and tender the defense to the insured upon exhaustion of the applicable limits of insurance under this policy. If we do not exercise the right to assume charge of such defense or settlement, or if the applicable limits of the **underlying**

IRONSHOREPOL-00161

**insurance** are not exhausted, we shall have the right and shall be given the opportunity to associate effectively with the insured or the **underlying insurer** or both, in the defense and control of any claim or suit likely to involve this policy.  In such events, the insured, the **underlying insurer** and we shall cooperate in the defense of such claim or suit.

2. The insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for an amount to which this policy applies without our written consent.

B. **CANCELLATION AND NONRENEWAL**

1. This policy may be canceled by the first Named Insured listed in **Item 1.** of the Declarations of this policy by mailing or delivering to us advance written notice of cancellation. This policy may be canceled by or on behalf of us by delivering to the first Named Insured or by mailing to the first Named Insured, by registered, certified, or other first class mail, at the first Named Insured's address set forth in **Item 1.** of the Declarations, written notice stating when thereafter, not less than ten (10) days in the event any premium is not paid when due, and not less than sixty (60) days in all other cases, cancellation shall be effective.  If notice is mailed, proof of mailing will be sufficient proof of notice.  It is agreed that the first Named Insured shall act on behalf of all insureds with respect to giving and receiving notice of cancellation. The **policy period** terminates at the date and hour specified in such notice, but in case of notice of cancellation by the first Named Insured, in no event prior to the date such notice is received by us.

2. If this policy shall be canceled by the first Named Insured, we shall return ninety percent (90%) of the unearned portion of the premium calculated on a pro rata basis unless there is a Minimum Earned Premium set forth in **Item 6.** of the Declarations, in which case, we will retain the Minimum Earned Premium and return the difference, if any, between the Minimum Earned Premium and the unearned portion of the premium calculated on a pro rata basis.

3. If this policy is canceled by us, we shall return to the first Named Insured the unearned portion of the premium calculated on a pro rata basis.

4. Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

5. If we decide not to renew, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than sixty (60) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

C. **CHANGES IN FOLLOWED POLICIES**

If during the **policy period** of this policy, the terms, conditions, exclusions or limitations of the **controlling underlying insurance** are changed in any manner from those in effect on the inception date of this policy, you shall as a condition precedent your rights under this policy give us, as soon as practicable, written notice of the full particulars thereof. This policy shall become subject to any such changes upon the effective date of the changes in the **controlling underlying insurance**, but only upon the condition that we agree to follow such changes in writing and you agree to any additional premium or amendment of the provisions of this policy required by us relating to such changes.  Further, such change in coverage is conditioned upon payment when due of any such additional premium required by us relating to such changes.

D. **CHOICE OF FORUM**

In the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that any such litigation shall take place in the appropriate federal or state court located in New York, New York and any arbitration or other form of dispute resolution shall take place in New York, New York.

E.  **CHOICE OF LAW**

In the event that the insured and we have any dispute concerning or relating to this policy including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles. The terms and conditions of this policy shall not be deemed to constitute a contract of adhesion and shall not be construed in favor of or against any party hereto by reason or authorship or otherwise.

F.  **ECONOMIC AND TRADE SANCTIONS**

In accordance with the laws and regulation of the United States concerning economic and trade sanctions administered and enforced by The Office Of Foreign Assets Control (OFAC), this policy is void ab initio solely with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade sanctions.

G.  **EXTENDED REPORTING PERIOD**

1.  In the event that (i) this policy is cancelled (other than for non-payment of premium or non-compliance with the policy terms and conditions) or non renewed, and (ii) you are entitled to and exercise your right to elect an extended reporting period under the **controlling underlying insurance** and all **underlying insurance**, you shall have the option of purchasing an extended reporting period applicable to this policy for an additional premium.

2.  For the extended reporting period to apply, you must exercise your right to purchase the extended reporting period by providing us with written notification of such election prior to the end of the **policy period**. The extended reporting period then becomes operative upon payment of an additional premium not to exceed 200% of the policy premium for this policy.

3.  The extended reporting period starts with the end of the **policy period** of this policy and ends thirty six (36) months after the end of the **policy period** of this policy. However, in no event shall the extended reporting period under this policy be longer than the shortest extended reporting period under the **controlling underlying insurance** or any **underlying insurance**.

H.  **MAINTENANCE OF UNDERLYING INSURANCE**

While this policy is in effect, you agree to maintain the **underlying insurance** in full force. Your failure, or the failure of others, to comply with this condition will not invalidate this policy, but in the event of such failure, we will only be liable to the same extent as if there had been compliance.

I.  **PAYMENT OF PREMIUM**

The first Named Insured listed in **Item 1.** of the Declarations of this policy shall be responsible for and act on behalf of all insureds with respect to the payment of any premiums due under this policy.

J.  **REQUIRED NOTICE TO US**

1.  **Notice of Event**

    a)  You shall, as a condition precedent to the obligations of us under this policy, give written notice as soon as practicable to us of any **event** reasonably likely to involve this policy.

    b)  Without limiting the requirements of paragraph a. above, you shall separately, and as soon as practicable, give written notice to us when a payment is made or reserve established for any **event** which has brought

the total of all payments and reserves to a level of twenty-five percent (25%) or more of the **underlying insurance**.

2. Notice Regarding Underlying Insurance

You shall, as a condition precedent to our obligations under this policy, give written notice to us of the following events as soon as practicable but no later than thirty (30) days after you have become aware of the event:

a) Any **underlying insurance** being cancelled or non-renewed or otherwise ceasing to be in effect or being uncollectible in part or in whole; or

b) Any **underlying insurer** being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority.

Notice to an **underlying insurer** shall not constitute notice to us.

K. **RESTRICTIVE AS UNDERLYING**

Notwithstanding any provision to the contrary in this policy, if any **underlying insurance** with limits in excess of the **controlling underlying insurance** but underlying to this policy (the "intervening policy") contains warranties, terms, conditions, exclusions or limitations more restrictive than the **controlling underlying insurance**, whether on the effective date of this policy or at any time during the **policy period** of this policy, then this policy shall be deemed to follow those more restrictive warranties, terms, conditions, exclusions or limitations of the intervening policy.

L. **SERVICE OF SUIT**

Subject to paragraph **D.** above, it is agreed that in the event of failure of us to pay any amount claimed to be due hereunder, we, at the request of the insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon us and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, we hereby designate the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statue, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named counsel as the person to whom the said officer is authorized to mail such process or true copy thereof.

M. **UNIMPAIRED UNDERLYING LIMITS**

You warrant that the aggregate limits of the **underlying insurance**, as shown in the Schedule of Underlying Insurance, shall be unimpaired as of the effective date of this policy. In the event such underlying aggregate limits are impaired as of the effective date of this policy, this policy shall apply as if such aggregate limits were unimpaired. In the event of non-concurrent policy periods between this policy and **underlying insurance**, only that which must take place during the **policy period** of this policy in order for coverage to apply shall be considered in determining the extent of any erosion or exhaustion of the underlying aggregate limits, and the insured shall retain liability for any resulting gap in coverage.

V. **DEFINITIONS**

A. **Event** means occurrence, incident, claim, loss, offense, accident, person or organization, employee or any other term used in the **controlling underlying insurance** for the application of limits of insurance, including self-insured retentions, retained limits and deductibles (whether added to or deducted from limits of insurance).

B. **Controlling underlying insurance** means the policy listed in **Item 5.** of the Declarations of this policy.

C. **Policy period** means the period of time stated in **Item 2.** of the Declarations however, if the policy is cancelled in accordance with **SECTION V – CONDITIONS**, paragraph **2. Cancellation and Nonrenewal**, the **policy period** ends on the effective date of such cancellation.

D. **Underlying insurance** means those policies that are listed in the Schedule of Underlying Insurance attached to this policy, and any other applicable underlying insurance including any self-insured retentions, retained limits and deductibles (whether added to or deducted from the limits of insurance) under the foregoing.

E. **Underlying insurer** means any insurer who has issued any of the policies listed in **Items 4.** or **5.** of the Declarations.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be executed and attested, but this Policy will not be valid unless countersigned by a duly authorized representative of the Insurer, to the extent required by applicable law.


Ironshore Specialty Insurance Company by:

Secretary                                          President