UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>                        Plaintiff,<br><br>v.<br><br>CEDAR GROVE COMPOSTING, INC.,<br>CEDAR GROVE COMPOSTING FACILITY,<br>and CEDAR GROVE, INC.,<br><br>                        Defendants. | Case No.:   15-CV-975 (NRB) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY PENDING DETERMINATION OF PROPER FORUM UNDER FIRST-TO-FILE RULE**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York  10036
(212) 223-0400
Attorneys for Defendants

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | DISCUSSION | 2 |
| | A. | Ironshore Does Not Dispute the Bright Line Rule or that the First-to-File Rule Arguments are Properly Before the Court in the Washington Action. | 2 |
| | B. | Ironshore Fails to Identify Any Legitimate Bases to Oppose the Stay. | 3 |
| | C. | Ironshore's Arguments Regarding Application of the First-to-File Rule Should Be Heard by the Court in Washington and Lack Merit. | 6 |
| | | 1. The Choice of Forum Clause Is Void. | 6 |
| | | 2. Ironshore's Claim That the Washington Action Is Limited to the Primary Policy and Not the Excess Policy Is Wrong. | 8 |
| | | 3. Ironshore's Claim That the Washington Action Does Not Involve Substantive "Coverage Issues" Like the New York Action Is Wrong. | 9 |
| III. | | CONCLUSION | 10 |

## I. INTRODUCTION

Cedar Grove's Motion for Stay Pending Determination of Proper Forum Under First-To-File Rule ("Motion") presented a single question: Should this Court grant a limited stay of this proceeding to allow Judge Jones in the Washington Action sufficient time to determine which of the two coverage actions qualifies as the first-filed action? Cedar Grove's Motion established that Judge Jones must complete the first-to-file analysis under the "bright line rule" adopted by courts in this District and that a short stay of this action was necessary to preserve the resources of the Court and the parties, as well as to avoid duplicative review of the same issues by the two federal courts.

Ironshore's response to the Motion ("Opposition") does not dispute the fact that Judge Jones must decide the first-to-file issue, or challenge the fact that the issue has already been fully briefed and submitted to Judge Jones for decision. Attempting to side-step these facts, Ironshore instead focuses on arguing the substantive merits of the first-to-file issue already fully briefed and submitted to Judge Jones in Washington. Specifically, Ironshore claims that the Washington and New York actions are not "duplicative" or "competing" and, therefore, that the first-to-file rule should not be applied to preclude it from litigating in this Court.

Ironshore's arguments miss the point of Cedar Grove's Motion in this Court. Cedar Grove's Motion seeks only a limited stay to allow Judge Jones to fully evaluate and decide <u>all</u> of the issues and arguments already raised by the parties on the first-to-file issue – <u>including all of the very same arguments that Ironshore has already made to Judge Jones about whether the two actions are duplicative and competing and that Ironshore attempts to make again for a second time to this Court in its Opposition</u>. It is undisputed that all of these issues and arguments are already squarely before Judge Jones on Cedar Grove's fully-briefed first-to-file motion. Ironshore's request to have this Court evaluate these very same issues and arguments would put the cart before the horse and

1

completely negate the bright line rule that the first-filed court completes the first-to-file analysis. It provides no reason to deny a limited stay while Judge Jones decides this threshold issue.

Next, Ironshore proffers the wrong legal standard, relying primarily on the eighty-year-old case of *Landis v. North American Co*, 299 U.S. 248 (1936). *Landis* is inapplicable here because Ironshore is already a party to the Washington action. It is not being asked to stand by while other persons resolve an issue that will define its rights. Ironshore cannot reasonably dispute that the short stay requested will achieve economy of time and effort for the parties and this Court. And Ironshore fails to identify any prejudice that would result from such a stay.

Finally, Ironshore devotes most of its Opposition to arguing why the first-to-file rule should not require it to litigate its claims in the Washington action. Its arguments are all incorrect as a matter of fact and law, as previously briefed in the Washington Action and summarized for the Court below. Most importantly, all of these issues (including the validity of the forum selection clause) are all indisputably already before Judge Jones for decision. Consistent with first-to-file analysis and this Court's bright line rule, this Court should grant a limited stay of this action to allow Judge Jones sufficient time to decide them.

## II. DISCUSSION

### A. Ironshore Does Not Dispute the Bright Line Rule or that the First-to-File Rule Arguments are Properly Before the Court in the Washington Action.

Ironshore does not dispute the "bright line rule" that the first-filed court should complete the first-to-file analysis. It also does not dispute that the issues raised under the first-to-file rule already have been fully briefed to Judge Jones in the Washington Action. And it does not dispute (and did not dispute in its Opposition filed in the Washington action) that the Western District of Washington is the proper court to undertake the first-to-file analysis.

Ironshore's Opposition nonetheless apparently seeks to have this Court complete the first-to-file analysis in connection with this stay motion, arguing that the first-to-file rule does not allegedly

2

apply because, according to Ironshore, the Washington and New York actions are not "duplicative" or "competing." Putting aside that Ironshore's argument is incorrect (for the reasons already detailed in briefing to the Western District of Washington, submitted with the accompanying Declaration of Anthony Giacobbe, Jr., and summarized again for the Court's convenience below), that is the issue that must be decided by Judge Jones under the first-to-file rule and this Court's bright line. Simultaneous consideration of these same issues by this Court would negate the bright line rule and the purpose underlying the first-to-file rule, and would run the risk of creating conflicting decisions on this threshold issue.

B.  **Ironshore Fails to Identify Any Legitimate Bases to Oppose the Stay.**

Cedar Grove established in its Motion that the Court has inherent authority to stay a case where doing so would aid in the disposition of litigation "with economy of time and effort for itself, for counsel, and for the litigants." Mot. at 9. Cedar Grove established that this standard supports a stay here to avoid duplicative first-to-file analysis and a motion to dismiss this case for lack of jurisdiction that will be unnecessary if Cedar Grove's first-to-file motion is granted. *Id.* Cedar Grove also cited to case law from this district specifically supporting a stay pending determination of the first-to-file issue, including cases from this very Court. *Id.* (citing *Noble v. U.S. Foods, Inc.*, 2014 U.S. Dist. LEXIS 162643, at *16 (S.D.N.Y. Nov. 19, 2014)).

Ignoring the applicable standard, Ironshore misleadingly cites to *Landis v. North American Co.*, 299 U.S. 248 (1936). In *Landis*, petitioners were seeking to challenge the enforcement of the Public Holding Company Act of 1935 as unconstitutional and void, and their cases were stayed pending determination of the same issue in other proceedings being pursued by different petitioners. The Court recognized that "only in rare cases will a litigant be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both" and, therefore, required the showing of "a clear case of hardship or inequity, if there is even a fair possibility that the stay …

3

will work damage to someone else." *Landis* concerned a stay pending a merits decision in proceedings involving <u>different parties</u>. The reasoning of that case obviously does not apply here, a case in which <u>the parties are the same</u> and only a short stay has been requested pending a determination of which court will make the merits decision.[1] In any event, Ironshore has not demonstrated any possibility that it will be damaged by the proposed stay, and it is clearly inequitable to require an insured to incur the time and expense of litigating coverage against the same insurer on two fronts while a first-to-file motion is pending.

Next, Ironshore argues that it will be prejudiced if the Court stays these proceedings "instead of proceeding to determine whether coverage is owed," because Ironshore has been paying Cedar Grove's defense costs in underlying litigation. Opp. at 7. The Court should reject these baseless claims for several reasons.

First, contrary to Ironshore's argument, Cedar Grove is not seeking to stay any coverage determinations. All such underlying coverage issues are part of the Washington Action and have been since the case was filed last August, a fact already addressed at length in Cedar Grove's briefing before Judge Jones. *See* Reply in Support of First-to-File Motion (Giacobbe Decl. Ex. 2) at 5-7. In short, Cedar Grove seeks only a short stay of this case so that Judge Jones has sufficient time to decide which court will make such coverage determinations moving forward.

Second, Ironshore's payment of defense costs cannot constitute "prejudice" resulting from the stay, because Ironshore's obligation to pay such defense costs is based on its insurance policy, not whether this case is litigated in Washington or in New York. Tellingly, Ironshore has not

---

[1] *Quinn v. Walgreen Co.*, *Nautilus Neurosciences, Inc. v. Fares*, and *Burns v. Gerber*, which Ironshore also cites, concerned application of the first-to-file rule and whether to issue a stay or dismissal under that rule, not the propriety of a short stay pending completion of the first-to-file analysis by another court. The court in *Burns*, in fact, stayed the case pending a decision whether the case should be transferred to an MDL, noting that "the weight of authority suggests that granting a stay under these circumstances is both routine and advisable." 2012 WL 8251405, at *5 (E.D. Wash. Sept. 4, 2012).

provided the Court with a single authority supporting the premise that complying with its legal obligation to fund Cedar Grove's defense while the parties await Judge Jones' ruling is somehow "prejudicial." No such authority exists.

Third, Ironshore has no basis to argue that any coverage determination would be made more quickly in this Court than in the Washington Action that was commenced five months earlier. The parties have already conducted their Rule 26 conference in the Washington Action, discovery commenced in the Washington Action months ago with Cedar Grove's service of interrogatories and requests for production this past February, and the parties already have a trial set for May 2, 2016 – <u>a little over twelve months from today's date</u>.  Ironshore has also represented to the Washington court in a Joint Status Report that its discovery "will include, but not be limited to, information relevant to whether the subject insurance policy provides coverage for the claimed losses." Thus, if Ironshore truly wishes to proceed with discovery relating to its coverage defenses while the first-to-file motion remains pending, it is more than free to do so in the Washington Action.

Fourth, if there has been any delay, it has been caused by Ironshore, which chose to wait until it had a motion to dismiss on file in the Washington Action before filing its New York complaint, and then failed under local rules to timely disclose to Cedar Grove or the court in the Washington Action that this related New York action had been filed. Ironshore is solely responsible for any alleged delay created by this truly questionable litigation tactic.

Finally, denying the stay will indisputably result in additional motion practice and delay in this Court, as Cedar Grove would be required to file a motion to dismiss for lack of jurisdiction if the stay is denied. While Ironshore may believe that it will prevail on such motion if the forum selection clause in its follow-form excess policy is enforced, there is no dispute that the validity of

5

that clause is <u>already</u> before Judge Jones in the Washington Action. As briefed in the Washington Action, the forum selection clause is void as a matter of law by Washington statute. The clause also is unenforceable because it was deleted from the primary policy and Cedar Grove was led to believe that it would not be part of the follow-form excess coverage. Other than that invalid clause, there is no basis whatsoever to require Cedar Grove, a Washington company, to litigate in New York claims for coverage under an insurance policy delivered in the State of Washington, for claims relating to defense costs incurred in litigation in Washington relating to Cedar Grove's facilities in Washington. In short, denial of the stay will not only result in unnecessary expenditure of party and judicial resources, it will also result in two federal courts simultaneously reviewing the same issues for the same parties, the very thing that the first-to-file rule and the bright line rule were designed to prevent.

**C.   Ironshore's Arguments Regarding Application of the First-to-File Rule Should Be Heard by the Court in Washington and Lack Merit.**

There is no dispute that <u>all</u> of Ironshore's arguments regarding why the first-to-file rule allegedly does not apply here have been briefed to Judge Jones in the Washington Action. A copy of the First-to-File Motion was previously submitted with Cedar Grove's Motion for Stay. Copies of Ironshore's Opposition and Cedar Grove's Reply are being submitted herewith as exhibits to the accompanying Giacobbe Declaration. Following the first-to-file rule and the bright line rule, this Court should defer to the decision of the Western District of Washington on these issues. While the Court need not address these issues given the fact that they are already before Judge Jones for decision, Cedar Grove's responsive arguments are summarized briefly again below for the Court's convenience.

**1.   The Choice of Forum Clause Is Void.**

Ironshore does not dispute that it delivered the excess policy to Cedar Grove in Washington or that RCW 48.18.200 expressly voids forum selection clauses contained in insurance contracts

6

delivered in Washington State. Nonetheless, Ironshore argues that the forum selection clause remains valid under the theory that "enforceability of a forum selection clause is a procedural issue decided by federal law, and state statutes have no relevance." Opp. at 12. That argument fails for the reasons set forth in Cedar Grove's Reply in the Washington Action and already argued to Judge Jones. *See* WA Reply at 8-10 (Giacobbe Decl., Ex. B). Specifically, *Atlantic Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568 (2013), makes it clear that its holding that forum selection clauses will be enforced as a matter of federal procedure applies only to the enforcement of otherwise "valid" forum selection clauses. *See Atlantic Marine*, 134 S. Ct. at 500 ("[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause") (emphasis added). The Supreme Court emphasized this point, expressly indicating that the "analysis presupposes a contractually valid forum selection clause." *Id.* at 500 n.5. No such "valid" forum selection clause is present here given the clear language of RCW 48.18.200,[2] and various courts applying the holding of *Atlantic Marine* have confirmed that it has no application in such circumstances. *See, e.g., Frango Grille USA, Inc. v. Pepe Franchising Ltd.*, 2014 U.S. Dist. LEXIS 182207 (C.D. Cal. July 21, 2014) (confirming that *Atlantic Marine* only "applies only to valid forum selection clauses" and refusing to transfer claims pursuant to a forum selection that was "invalidate[d]" by the California Franchise Relations Act).[3]

---

[2] Similarly, in *Martinez v. Bloomberg, L.P.*, 740 F.3d 211, 214 (2nd Cir. 2014), which Ironshore relies upon, the Court "h[e]ld that where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause while federal law governs the enforceability of the forum selection clause") (emphasis added). The choice of law and choice of forum clauses contained in Ironshore's excess policy are both invalid under RCW 48.18.200.

[3] This is consistent with a long line of cases rendering contractual choice of forum clauses unenforceable in diversity jurisdiction where they are voided by a state statute. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) (choice of forum clause "unenforceable" where it "contravened California's strong public policy" "expressed in [California statute]" voiding such clauses); *Idacorp, Inc. v. American Fiber Systems, Inc.*, 2012 U.S. Dist. LEXIS 135049 (D. Idaho Sept. 19, 2012) (forum selection clause unenforceable where it contravened Idaho statute).

Driving these points home, the Western District of Washington recently rejected attempts by Ironshore's same counsel here to transfer a different case from the Western District of Washington to the Southern District of New York under a similar choice-of-forum provision in an insurance policy. *Jorgenson Forge Corp. v. Illinois Ins. Co.*, No. 2:13-cv-01458-BJR, Dkt. 34, Order Denying Defendant's Motion to Transfer or Dismiss at 4-6 (slip copy submitted with WA Reply as Attachment A). After exhaustively reviewing the meaning and intent of RCW 48.18.200, the court voided the clause as a matter of law and confirmed that giving "effect to the forum selection clause would create the very situation that the statute sought to eliminate." *Id.* at 6.

Additionally, even if the forum selection clause were not voided by statute, Cedar Grove vigorously disputes Ironshore's unsupported claim that it was intended to be part of the excess policy. To the contrary, Cedar Grove expressly requested that the clause be removed from Ironshore's policy, Ironshore indicated that it would do so, and Cedar Grove was led to believe that the legally void provision, which was removed from the primary policy, would therefore not be part of the "follow-form" excess coverage. Under the circumstances, the clause is not valid, does not support the transfer of any claims to this Court, and would not subject Cedar Grove to personal jurisdiction in this Court.[4]

2. **Ironshore's Claim That the Washington Action Is Limited to the Primary Policy and Not the Excess Policy Is Wrong.**

Cedar Grove's Reply in the Washington Action also addresses Ironshore's meritless argument that the Washington Action is limited to the primary policy and that Cedar Grove has not sought to amend its complaint to assert claims under the excess policy. *See* WA Reply at 3-5 (Giacobbe Decl., Ex. B). As set forth therein, with citation to the record and applicable case law:

---

[4] Forum selection clauses are not enforced in the Second Circuit if it "would be unreasonable or unjust," or where the clause "was the result of fraud or overreaching." *Martinez v. Bloomberg, L.P.*, 740 F.3d 211, 227-228 (2nd Cir. 2014).

- The Washington Action seeks coverage determinations applicable to both the primary and excess policies; there is no authority requiring express identification of an excess policy issued by an insurer already named in a complaint in order to prosecute claims under that policy, let alone where the excess policy is a "follow-form" policy that incorporates the terms of the primary policy and the two policies were sold together as a single tower of combined coverage.

- Liberal pleading standards are intended to foster a comprehensive decision on the merits, not trickery and gamesmanship, and were not intended to create the type of hyper-technical reading of pleadings to allow Ironshore to claim to one court that the parties' dispute is allegedly "moot" while at the same time secretly filing a competing action in its home state that relates to the very *same* dispute, the very *same* parties, and the very *same* insurance coverage issues already at issue in this case – all because the first-filed complaint did not expressly identify <u>one</u> of the two insurance policies at issue.

- Cedar Grove's submission of evidence and argument regarding the excess policy in opposition to Ironshore's motion to dismiss, and indication that it will amend if the court deems necessary, is the equivalent of a pleading amendment or a motion for leave to amend a complaint. *See, e.g., Chemical Bank v. Bright Star Holding, Inc.*, 1989 U.S. Dist. LEXIS 6433, *12 (S.D.N.Y. June 8, 1989) ("[T]o avoid the academic exercise of requiring [plaintiff] to amend its complaint to allege the assertion made in its memorandum, we will deem the complaint amended so to allege.").[5]

- It is established law that the first-filed action remains first-filed regardless of whether plaintiff amends the complaint. Thus, even assuming an amendment is necessary, such amendment would not in any way affect the first-to-file issue. *See, e.g., GMT Corp. v. Quicksilver*, 2002 U.S. Dist. LEXIS 14195, at *6 (S.D.N.Y. July 31, 2002) ("[t]his circuit applies the first-filed rule in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district").

3. **Ironshore's Claim That the Washington Action Does Not Involve Substantive "Coverage Issues" Like the New York Action Is Wrong.**

Cedar Grove's Reply in the Washington Action (*see* pp. 5-7) also addresses Ironshore's incorrect argument that the Washington Action does not involve substantive coverage issues like the New York Action:

- The very first paragraph of Cedar Grove's complaint confirms that the Washington Action "is an action for a declaratory judgment . . . adjudicating the respective <u>rights, duties, and obligations of the parties under an insurance policy</u> issued by Ironshore Specialty Insurance Company . . . ." WA Complaint at ¶ 1 (emphasis added). Cedar Grove also alleged that it incurred "losses covered by the Policy" and that Ironshore "breached the obligations set forth" in its policy. *Id.* at ¶¶ 45-46.

---

[5] *See also, e.g., GlycoBiosciences, Inc. v. Nycomed US, Inc.*, 2012 U.S. Dist. LEXIS 20470, *9 (E.D.N.Y. Feb. 15, 2012) (same); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) ("[A]ddition of new issues during the pendency of a summary judgment motion can be treated as a motion for leave to amend."); *Rodriguez v. City of New York*, 2015 U.S. Dist. LEXIS 7947, *2 n.2 (E.D.N.Y. Jan. 23, 2015) (finding "complaint is deemed amended to incorporate all allegations of fact made in Rodriguez's memorandum of law in opposition to the City's motion to dismiss").

9

- A cursory examination of the allegations outlined in the Mirror Image Allegations chart submitted with Cedar Grove's Motion for Stay and its Reply confirms that the claims and defenses at issue in the New York Action are substantially similar (if not outright identical) to those already at issue in this case. Both cases involve a declaration of the *same* coverage rights under the *same* policy provisions relating to coverage for the *same* defense costs billed by the *same* Washington attorneys arising from the defense of the very *same* underlying litigation pending against Cedar Grove here in Washington. Both cases involve the *same* witnesses and will require the *same* factual and legal determinations.

- The only reason that Ironshore has not already pled in the Washington Action the same coverage defenses raised in the New York Action is that Ironshore chose to file a motion to dismiss in the Washington Action instead of answering the complaint. Unless Ironshore intends to concede coverage and not raise coverage defenses in the Washington Action, it will necessarily plead each and every one.

- Ironshore's own motion to dismiss and the portions of the Joint Status Report drafted by Ironshore's own counsel indicated that Ironshore intends to pursue substantive "coverage issues" in the Washington case. *See* WA Dkt. No. 23 at 9; Dkt. No. 30 at 2. Indeed, Ironshore's portion of the JSR confirmed that it intended to conduct discovery of substantive "coverage issues" and went so far as to request a separate discovery cutoff and trial date for those "coverage issues."[6]

### III.   CONCLUSION

For the reasons stated in Cedar Grove's Motion and above, the Court should grant Cedar Grove's Motion for Stay Pending Determination of Proper Forum Under First-To-File Rule.

Dated:   New York, New York
         April 27, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: /s/ Anthony I. Giacobbe, Jr.
    Anthony I. Giacobbe, Jr., Esq.
    Attorneys for Defendants
    1211 Avenue of the Americas
    New York, NY 10036
    (212) 223-0400

---

[6] *Diascience Corp. v. Blue Nile, Inc.*, 2009 WL 1938970 (S.D.N.Y. July 7, 2009) is inapposite. In *Blue Nile*, defendant "d[id] not contest" that the allegations in the Washington case "d[id] not bear on" the claims alleged in the New York case and, therefore, a stay of the New York case pending resolution of the Washington case was not warranted. *Id.* at *5. That is not the case here, where Cedar Grove seeks a declaration of coverage and payment of defense costs, and Ironshore seeks a declaration of non-coverage and reimbursement of the very same defense costs.